IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR 13-00889 LEK |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| SHERRYANNE L. CHRISTIE, FKA | ) | |
| Sherryanne L. St. Cyr, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**ORDER DENYING MOTION UNDER 28 U.S.C. § 2255 TO VACATE,
SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL
CUSTODY AND DENYING A CERTIFICATE OF APPEALABILITY**

Before the Court is pro se Defendant/Petitioner

Sherryanne L. Christie's ("S. Christie") Motion under 28 U.S.C.

§ 2255 to Vacate, Set Aside, or Correct Sentence by a Person in

Federal Custody ("§ 2255 Motion"), filed on April 27, 2017.

[Dkt. no. 78.]  Plaintiff/Respondent the United States of America

("the Government") filed its response to the § 2255 Motion

("Response") on September 25, 2017, and S. Christie filed her

reply on October 27, 2017.  [Dkt. nos. 121, 123.]  S. Christie's

§ 2255 Motion is hereby denied, and a certificate of

appealability is also denied, for the reasons set forth below.

**BACKGROUND**

On June 24, 2010, S. Christie – who was then known as

Sherryanne L. St. Cyr – and thirteen others were indicted in

Criminal Number 10-00384 LEK ("CR 10-384").  [CR 10-384, dkt.

no. 1.]  The grand jury returned the First Superseding Indictment

("Superseding Indictment") on January 17, 2013.  [Id., dkt.

no. 509.]  The Superseding Indictment alleged that Defendant

Roger Cusick Christie ("R. Christie"), with S. Christie's

assistance, operated the THC Ministry – also known as the Hawaii

Cannabis Ministry – in Hilo, Hawai`i, and the operation illegally

manufactured, distributed, and sold marijuana.  The Superseding

Indictment charged S. Christie with: one count of conspiracy to

manufacture, distribute, and possess with intent to distribute

one hundred or more marijuana plants, as well as harvested

marijuana, processed marijuana and products containing marijuana,

in violation of 21 U.S.C. § 841(a)(1) ("Count 1"); manufacturing

approximately 284 marijuana plants, in violation of § 841(a)(1)

and (b)(1)(B) and 18 U.S.C. § 2 ("Count 2"); possessing with

intent to distribute approximately 284 marijuana plants, in

violation of § 841(a)(1) and (b)(1)(B) and § 2 ("Count 3"); and

maintaining a place for the purpose of manufacturing and

distributing marijuana, manufacturing approximately 284 marijuana

plants, in violation of 21 U.S.C. § 856(a)(1) and (b)

("Count 13").  On February 1, 2013, S. Christie pled not guilty

to the charges in the Superseding Indictment.  [Id., Minutes,

filed 2/1/13 (dkt. no. 540).]  During the underlying proceedings

in this district court relevant to the § 2255 Motion, S. Christie
was represented by Lynn Panagakos, Esq.[1]

On April 1, 2013, S. Christie and R. Christie ("the
Christies") jointly filed a motion seeking a ruling that they
would be allowed to present a defense under the Religious Freedom
Restoration Act ("RFRA"), 42 U.S.C. § 2000bb-1.  [Id., Motion in
Limine to Present Religious Freedom Restoration Act Defense
("RFRA Motion"), filed 4/1/13 (dkt. no. 587).]  The Christies
presented evidence that R. Christie was the founder and leader of
the THC Ministry.  [Id., RFRA Motion, Decl. of Roger Christie
("R. Christie Decl.") at ¶ 10.]  S. Christie was an ordained
minister in the THC Ministry, and she managed it when R. Christie
was recovering from a broken ankle.  [Id., RFRA Motion, Decl. of
Sherryanne L. Christie ("S. Christie Decl.") at ¶¶ 16-17.]
R. Christie stated: "I consume, possess, cultivate and distribute
Cannabis as sanctioned and required by my legitimate religion and
sincere religious beliefs as a member of the THC Ministry.  The
consumption, possession, cultivation and distribution of Cannabis

---

[1] S. Christie was represented by Dana Ishibashi, Esq., and
then by Jeffrey Arakaki, Esq., prior to Ms. Panagakos.  The
§ 2255 Motion asserts each of S. Christie's attorneys rendered
ineffective assistance.  See EO: Court Order Granting
Pltf./Resp.'s Motion for an Order Directing Def./Pet. to Identify
which of Her Attorneys She Claims Were Ineffective, filed 6/16/17
(dkt. no. 89).  Although work done by Mr. Ishibashi and/or
Mr. Arakaki may have contributed to the case events S. Christie
challenges in the § 2255 Motion, it was Ms. Panagakos who
represented her during the district court proceedings relevant to
the § 2255 Motion.

are essential and necessary components of the THC Ministry."
[Id., R. Christie Decl. at ¶ 44.]  S. Christie made similar
statements.  [Id., S. Christie Decl. at ¶ 21.]  The RFRA Motion
asserted they were entitled to present a RFRA defense at trial
because they made a prima facie showing that the charges against
them substantially burdened their sincere exercise of their
religion, and the Government did not establish the prosecution
was the least restrictive means of furthering a compelling
governmental interest.

On September 11, 2013, an entering order was issued
informing the parties the RFRA Motion was denied ("9/11/13 RFRA
Ruling").  [Id., dkt. no. 719.]  The 9/11/13 RFRA Ruling was
superseded by subsequent written orders.  Ultimately, this Court
concluded: the Christies established a prima facie case under
RFRA, and the burden shifted to the Government to establish a
compelling interest in enforcing the Controlled Substances Act,
21 U.S.C. § 801, et seq. ("CSA"); and prosecuting the Christies
was the least restrictive means of furthering the compelling
interest.  [Id., First Preliminary Ruling as to Defs.' Motion in
Limine to Present Religious Freedom Restoration Act Defense,
filed 12/30/13 (dkt. no. 810), at 15-16.]  Ultimately, this Court
concluded the Government met its burden as to both elements and
denied the RFRA Motion.  [Id., Order Denying Defs.' Motion in

Limine to Present Religious Freedom Restoration Act Defense,
filed 12/30/13 (dkt. no. 811) at 24-25, 28.]

While the Christies were litigating the RFRA Motion,
they were also litigating the issue of whether they could raise
an entrapment defense at trial. [R. Christie's Notice of Intent
to Rely on Defense of Entrapment by Estoppel at Trial, filed
7/29/13 (dkt. no. 658); Motion in Limine to Prohibit Defendant
Roger Cusick Christie from Presenting Defense of Entrapment by
Estoppel ("Entrapment Motion"), filed 8/6/13 (dkt. no. 663).] A
hearing on the Entrapment Motion was held on September 19, 2013,
and an outline of this Court's ruling was issued on September 20,
2013 ("9/20/13 Entrapment Ruling"). [Minutes, filed 9/19/13
(dkt. no. 730); Minutes (further hearing), filed 9/19/13 (dkt.
no. 732); 9/20/13 Entrapment Ruling (dkt. no. 735).] The 9/20/13
Entrapment Ruling stated R. Christie had to make a showing of how
statements allegedly made to him by state and county officials
were relevant to his entrapment by estoppel defense before the
testimony would be presented to the jury, and that S. Christie
made a prima facie showing to raise the defense. [9/20/13
Entrapment Ruling at 2.] A written order denying the Entrapment
Motion was filed on December 30, 2013. [Dkt. no. 812.]

After the 9/11/13 RFRA Ruling and the 9/20/13
Entrapment Ruling, pursuant to a plea agreement, S. Christie
entered a conditional plea of guilty to a one-count Information

charging her with conspiracy to manufacture, distribute, and possess with intent to distribute fifty or more marijuana plants, as well as harvested and processed marijuana and other products containing marijuana, in violation of § 841(a)(1) and (b)(1)(C). [Information, filed 9/26/13 (dkt. no. 1); Minutes, filed 9/27/13 (dkt. no. 5) (arraignment and plea to the Information); Mem. of Plea Agreement ("Plea Agreement"), filed 9/27/13 (dkt. no. 8).] In the Plea Agreement, S. Christie reserved the right to appeal certain pretrial rulings in CR 10-384, including the denial of the RFRA Motion. The Plea Agreement provided that S. Christie could withdraw her guilty plea if any of those pretrial rulings were reversed on appeal. The Plea Agreement expressly stated that the reservation of S. Christie's right to appeal those rulings did not authorize her to challenge those rulings in collateral proceedings, including through a § 2255 motion. [Plea Agreement at ¶¶ 4, 5B-5D.] S. Christie waived her right to bring a collateral attack against her sentence, or the manner in which it was determined, except for challenges based on the ineffective assistance of counsel of if her sentence was greater than the applicable range under the United States Sentencing Guidelines ("U.S.S.G." or "the Guidelines").[2] [Id. at ¶¶ 14.a-b.]

---

[2] The Government apparently does not seek to enforce this waiver.

S. Christie's guilty plea was accepted and she was adjudicated guilty on October 22, 2013. [Dkt. no. 13.] S. Christie's sentencing hearing was held on April 28, 2014. [Minutes, filed 4/28/14 (dkt. no. 23) ("Sentencing Minutes").] The Plea Agreement was accepted, and S. Christie was sentenced to twenty seven months of imprisonment and three years of supervised release.[3] [Id. at 1-2.] The Government's oral motion to dismiss the charges against S. Christie in CR 10-384 was granted.[4] [Id. at 3.] The Amended Judgment in a Criminal Case was filed on May 1, 2014. [Dkt. no. 28.]

S. Christie filed her Notice of Appeal on May 8, 2014. [Dkt. no. 29.] On June 24, 2015, the Ninth Circuit granted Ms. Panagakos's motion to withdraw as counsel, and Georgia McMillen, Esq., was appointed, effective June 25, 2015. [Dkt. nos. 46, 48.] The Christies filed a joint opening brief prior to Ms. Panagakos's withdrawal. Ms. McMillen filed a joinder in R. Christie's reply brief and appeared at the oral argument.

The Ninth Circuit affirmed both the judgment against S. Christie in this case and the and the judgment against R. Christie in CR 10-384 in an opinion filed on June 14, 2016.

_____

[3] S. Christie was allowed to surrender to serve her sentence forty five days after the Ninth Circuit's mandate was issued in the appeal. [Sentencing Minutes at 3.]

[4] An order dismissing the Superseding Indictment as to S. Christie was filed on April 30, 2014. [CR 10-384, dkt. no. 934.]

United States v. Christie, 825 F.3d 1048 (9th Cir. 2016).  The Ninth Circuit held, *inter alia*: the Government had a compelling interest in preventing the diversion of cannabis used by the THC Ministry and enforcing the CSA against the Christies meaningfully advanced that interest; id. at 1060; the Government could not achieve its compelling interest through any less restrictive means; and therefore prosecuting the charges against the Christies did not violate RFRA, id. at 1063-64.  It also held that: authorizing wiretaps of two telephone numbers associated with R. Christie and R. Christie's cellular phone was not an abuse of discretion; and the Christies were not entitled to an evidentiary hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978).  Christie, 825 F.3d at 1066, 1069.

The § 2255 Motion followed.  It alleges the following grounds: 1) S. Christie's guilty plea was not knowingly and voluntarily made because her attorney advised her that she had no other choice but to plead guilty after the denial of the RFRA Motion ("Ground One"); 2) the Government intentionally suppressed material exculpatory and impeachment evidence, and S. Christie would not have pleaded guilty if she had known about the evidence ("Ground Two"); 3) trial counsel was ineffective because of the failure to fully investigate the facts of the case and to file appropriate motions, and appellate counsel was ineffective because of the failure to raise trial counsel's effective

8

assistance ("Ground Three"); 4) denying S. Christie the ability

to present her RFRA defense was such a fundamental denial of her

rights that it was per se unconstitutional ("Ground Four"); and

5) she is entitled to § 2255 relief because of the Government's

overreaching in the underlying proceedings ("Ground Five").

## **STANDARD**

Section 2255(a) states:

> A prisoner in custody under sentence of a court
> established by Act of Congress claiming the right
> to be released upon the ground that the sentence
> was imposed in violation of the Constitution or
> laws of the United States, or that the court was
> without jurisdiction to impose such sentence, or
> that the sentence was in excess of the maximum
> authorized by law, or is otherwise subject to
> collateral attack, may move the court which
> imposed the sentence to vacate, set aside or
> correct the sentence.

This district court has described the standards applicable to

§ 2255 motions as follows:

> A court may dismiss a § 2255 motion if "it
> plainly appears from the motion, any attached
> exhibits, and the record of prior proceedings that
> the moving party is not entitled to relief."
> R. 4(b), Rules Governing Section 2255 Proceedings.
> A court need not hold an evidentiary hearing if
> the allegations are "palpably incredible [or]
> patently frivolous," Blackledge v. Allison, 431
> U.S. 63, 76 (1977) (internal quotation marks and
> citation omitted), or if the issues can be
> conclusively decided on the basis of the evidence
> in the record. See United States v. Mejia-Mesa,
> 153 F.3d 925, 929 (9th Cir. 1998) (noting that a
> "district court has discretion to deny an
> evidentiary hearing on a § 2255 claim where the
> files and records conclusively show that the
> movant is not entitled to relief"). Conclusory
> statements in a § 2255 motion are insufficient to

> require a hearing. <u>United States v. Johnson</u>, 988
> F.2d 941, 945 (9th Cir. 1993). A petitioner must
> "allege specific facts which, if true, would
> entitle him to relief." <u>United States v.
> Rodriques</u>, 347 F.3d 818, 824 (9th Cir. 2003)
> (internal quotation marks and citation omitted).

<u>United States v. Sherman</u>, Cr. No. 16-00169 JMS, 2017 WL 4560150,
at *1 (D. Hawai`i Oct. 12, 2017) (alteration in <u>Sherman</u>).

The issues raised in S. Christie's § 2255 Motion are
legal issues that "can be conclusively decided on the basis of
the evidence in the record," including the record of the
underlying proceedings. <u>See</u> <u>Mejia-Mesa</u>, 153 F.3d at 929. An
evidentiary hearing is therefore unnecessary in this case.

## **DISCUSSION**

### I.  **Procedural Bar**

At the outset, it must be noted that many of the
grounds in S. Christie's § 2255 Motion may be procedurally
barred. "Where a defendant has procedurally defaulted a claim by
failing to raise it on direct review, the claim may be raised in
habeas only if the defendant can first demonstrate either cause
and actual prejudice, or that he is actually innocent." <u>Bousley
v. United States</u>, 523 U.S. 614, 622 (1998) (citations and
internal quotation marks omitted).

> Generally, to demonstrate "cause" for procedural
> default, an appellant must show that "some
> objective factor external to the defense" impeded
> his adherence to the procedural rule. <u>Murray v.
> Carrier</u>, 477 U.S. 478, 488, 106 S. Ct. 2639, 91 L.

Ed. 2d 397 (1986).[5]  However, if the record
shows that an appellate counsel's performance fell
below the standard of competency of counsel set
forth in Strickland v. Washington, 466 U.S. 668,
104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), or that
he was denied representation by counsel on appeal
altogether, he has demonstrated cause for his
procedural default.  See Murray, 477 U.S. at 488,
106 S. Ct. 2639 ("Ineffective assistance of
counsel, then, is cause for a procedural
default."); Allen v. Risley, 817 F.2d 68, 69 (9th
Cir. 1987) ("'Attorney error short of ineffective
assistance of counsel does not constitute cause
for a procedural default.'") (quoting Murray, 477
U.S. at 492, 106 S. Ct. 2639). . . .

United States v. Skurdal, 341 F.3d 921, 925-26 (9th Cir. 2003)

(some citations omitted).  This district court has recognized

that § 2255 motions alleging ineffective assistance of counsel

claims should not be procedurally barred "because the record may

not be properly developed to raise ineffective assistance of

counsel claims on direct appeal."  Gowadia v. United States,

CRIM. NO. 05-00486 SOM, 2015 WL 5838471, at *3 (D. Hawai`i Oct.

5, 2015) (citing United States v. Frady, 456 U.S. 152, 167-68

(1982)).

Although S. Christie alleges violations of her

constitutional rights in the course of the proceedings and that

her guilty plea was not knowingly and voluntarily made, she does

not deny she committed the conduct which forms the basis of the

_____

[5] Murray was superseded on other grounds by the
Antiterrorism and Effective Death Penalty Act.  See, e.g., United
States v. Gonzalez-Largo, No. 2:07-cr-0014 JCM (RJJ), 2012 WL
3245522, at *2 (D. Nev. Aug. 7, 2012).

charge that she pled guilty to.  She must therefore establish

cause and prejudice to overcome any procedural bar.

S. Christie's alleged cause is that she was denied

constitutionally effective assistance of counsel.  Although it

could be argued that Ms. McMillen – who ultimately represented

S. Christie on appeal – could have argued on appeal that her

predecessors rendered ineffective assistance, it was

Ms. Panagakos who filed the opening brief on S. Christie's behalf

and framed the issues on appeal.  Thus, to the extent S. Christie

alleges Ms. Panagakos made errors in this district court and on

appeal, the record may not have been fully developed to raise

ineffective assistance even after she withdrew as S. Christie's

counsel.  Moreover, even if Ms. McMillen arguably had the

opportunity in the appeal to raise any alleged errors by prior

counsel, S. Christie also alleges Ms. McMillen rendered

ineffective assistance, and the record may not have been fully

developed.  If S. Christie establishes ineffective assistance of

counsel, it would establish cause for purposes of the procedural

bar analysis.

## II.  <u>Ground One - Was the Guilty Plea Knowing and Voluntary</u>

Ground One alleges S. Christie's guilty plea was not

knowingly and voluntarily made because her counsel advised her

she had no choice but to plead guilty because of the denial of

the RFRA Motion.  Ms. Panagakos denies making such statements to

Ms. Christie. [Response, Exh. 2 (Decl. of Lynn E. Panagakos ("Panagakos Decl.")) at ¶ 7.] Shortly after Ms. Panagakos was appointed as S. Christie's counsel, she sent a detailed letter, dated April 16, 2012, to S. Christie explaining the option of either accepting the Government's offered terms of a plea agreement or going to trial ("4/6/12 Letter"). [Id. at ¶ 3, Exh. 1 at 8-14 (4/16/12 Letter).[6]] In the 4/16/12 Letter "and on numerous subsequent occasions, [Ms. Panagakos] informed Ms. Christie that whatever she decided, [Ms. Panagakos] would vigorously represent her." [Panagakos Decl. at ¶ 3.] After learning that S. Christie was unable to read the 4/16/12 Letter, Ms. Panagakos met with her and read the 4/16/12 Letter to her aloud and discussed the contents of the letter with her. Ms. Panagakos also had another attorney attend the meeting to ensure S. Christie understood what was discussed. [Id. at ¶ 4.] "During this meeting, and at other times, [Ms. Panagakos] made it clear to Ms. Christie that the decision whether to enter a guilty plea or to proceed to trial was her decision to make." [Id.]

S. Christie rejected the plea offer. Ms. Panagakos received an email from S. Christie, dated May 30, 2012 and which appeared to be written to THC Ministry members, explaining her

_____

[6] The Panagakos Declaration and the exhibits thereto appear on the district court's electronic filing system as a single document that is not consecutively paginated. All citations to the Panagakos Declaration's exhibits refer to the page numbers assigned by the electronic filing system.

decision not to enter into a plea agreement ("5/30/12 Email").
[Id. at ¶ 5, Exh. 2 at 38-46 (5/30/12 Email).]  S. Christie
states a plea bargain was offered multiple times, and the
Christies refused.  [Panagakos Decl., Exh. 2 at 46.]
Ms. Panagakos asserts the 5/30/12 Email "makes clear that
Ms. Christie was well aware that it was her choice whether to
accept or reject a plea offer, and that she relied not on her
attorneys but on her husband, Roger Christie."  [Panagakos Decl.
at ¶ 5.]  S. Christie "relied extensively" on R. Christie
"[t]hroughout this litigation."  [Id. at ¶ 11.]  Ms. Panagakos
received an email from S. Christie dated September 7, 2013
("9/7/13 Email") stating the Christies learned many of their co-
defendants entered guilty pleas, and the Christies acknowledged
all of them "have free-will and each person needs to make-up
[sic] their own mind based on their unique circumstances."  [Id.
at ¶ 6, Exh. 3 at 55.]

        On September 19, 2013, the Assistant United States
Attorney on the case informed Ms. Panagakos that he would seek
approval for a global plea agreement for the Christies, and
Ms. Panagakos conveyed the offer to S. Christie.  [Panagakos
Decl. at ¶ 10.]  On the same date, Ms. Panagakos and S. Christie
had a joint defense conference with R. Christie and his counsel
to discuss the plea offer, the entrapment by estoppel defense,
the 9/11/13 RFRA Ruling, and other factors relevant to the

Christies' decision whether to enter into plea agreements.  [<u>Id.</u> at ¶ 11.]  "During this joint defense conference, as at all other times, it was made clear to the defendants that they were free to choose either alternative, and that it was their decision to make."  [<u>Id.</u>]  Ms. Panagakos had three meetings and at least two telephone conferences with S. Christie from September 20 to 27, 2013 to discuss the plea offer and the 9/20/13 Entrapment Ruling.  [<u>Id.</u> at ¶ 12.]  "During these meetings and telephone conferences, it was clear to Ms. Christie that it was her choice whether to accept the government's plea offer or to reject the plea offer and proceed to trial."  [<u>Id.</u> at ¶ 13.]

On September 25, 2013, Ms. Panagakos received a mass email from S. Christie with the subject "Why we took the plea bargain" ("9/25/13 Email").  [Panagakos Decl. at ¶ 14, Exh. 4.]  The 9/25/13 Email transmitted an article about the Christies' case that was posted by the Star Advertiser on that date, followed by a message from S. Christie and another by R. Christie.  S. Christie stated, "I love my husband and he had the last say.  I still wanted to go to court, but I see the larger picture of us plea-bargaining."  [Panagakos Decl., Exh. 4 at 60.]  R. Christie stated: "Now that all the important issues have been removed from trial, what's the point of a trial?  The imortance of keeping all the above issues [including the RFRA defense] ALIVE and growing towards an appeal in San Francisco is

what's primary.  We can appeal from prison or from home.  The choice was EASY."  [<u>Id.</u> (emphases in original).]

At her change of plea hearing, S. Christie stated that she was satisfied with Ms. Panagakos's representation.  [Trans. of 9/27/13 arraignment and plea hrg. ("9/27/13 Plea Trans."), filed 6/23/15 (dkt. no. 44), at 3-4.]  When the magistrate judge asked S. Christie: "Has anyone attempted in any way to force you to plead guilty here this morning?"  S. Christie responded: "Zero."  [<u>Id.</u> at 6.]  When the magistrate judge asked S. Christie: "Are you pleading guilty of your own free will, because you are in fact guilty?"  S. Christie responded: "Yes. . . .  I am guilty of the possession of marijuana with intent to distribute it; however, I reserve the right to argue on the appeal that my actions were legal pursuant to the Religious Freedom Restoration Act."  [<u>Id.</u> at 7.]

Even without considering whether S. Christie's statements in the § 2255 Motion are more credible than the statements in the Panagakos Declaration,[7] S. Christie's own statements in her emails and at the plea hearing show that she knowingly and voluntarily entered her guilty plea.  S. Christie

---

[7] An evidentiary hearing is required when credibility determinations are necessary to weigh conflicting declarations in a § 2255 proceeding.  <u>See</u> <u>Esparza v. United States</u>, Civ. No. 07-00375 SOM/LEK, 2008 WL 314243, at *6 (D. Hawai`i Feb. 5, 2008) (citing <u>United States v. Chacon-Palomares</u>, 208 F.3d 1157, 1159 (9th Cir. 2000)).

does not deny either that she sent the emails attached to the Panagakos Declaration or that the statements in the emails attributed to her were her own statements.  Instead, she argues her guilty plea was not knowingly and voluntarily made because of the Government's intentional withholding of evidence and defense counsel's failure to fully investigate the facts of the case. [Reply at 7.]  However, those arguments are not the basis of Ground One, and they are addressed in other portions of the § 2255 Motion.[8]  The argument in Ground One – S. Christie's guilty plea was not knowingly and voluntarily made because her counsel advised her she had no other choice – fails on the merits, based on S. Christie's statements discussed above. Because the argument is without merit, neither Ms. Panagakos nor Ms. McMillen rendered ineffective assistance by failing to raise the argument during her respective periods of representation. The § 2255 Motion is therefore denied as to Ground One.

## III. <u>Ground Two - Alleged Withholding of Evidence</u>

Ground Two alleges the Government intentionally withheld material exculpatory and impeachment evidence. S. Christie asserts United States Drug Enforcement Agency ("DEA") Agent Clement Sze's affidavits about the Hawai`i County Police

---

[8] S. Christie's argument that the Government withheld evidence is addressed in Ground Two, and her argument that her counsel in the district court proceedings rendered ineffective assistance by failing to investigate the facts is addressed in Ground Three.

Department's ("HCPD") use of a confidential source ("CS") were withheld from the defense and improperly sealed by this Court. She alleges the use of the CS, who had a criminal record and was being paid by HCPD, violated her constitutional and statutory rights because the CS "infiltrate[d] defendants' home, and 'private areas' of defendants' Ministry, and secretly record[ed] private conversations, without consent of defendants, or consent of any other person entitled to the privacy therein," and "obtain[ed] photographs and videos, from as early as 2004." [§ 2255 Motion at 6.] S. Christie contends that, if this information had not been withheld from the defense, she would not have pled guilty and would have proceeded to trial.

S. Christie's claim that Agent Sze's affidavits were withheld from the defense is belied by the record. Co-defendant John DeBaptist Bouey, III filed a Motion to Suppress Evidence seeking to suppress wiretapped conversations from two telephone numbers and all derivative evidence ("Motion to Suppress"). [CR 10-384, filed 12/10/12 (dkt. no. 476).] Agent Sze's ninety-page affidavit, dated April 8, 2009, in support of the wiretap application was filed as Exhibit A to the Motion to Suppress. [Id., filed 12/14/12 (dkt. no. 491).] R. Christie filed a substantive joinder in the Motion to Suppress, also seeking to suppress conversations and derivative evidence from the wiretap of another telephone number ("R. Christie Suppression Joinder").

18

[Id., filed 12/10/12 (dkt. no. 481).] Exhibit B to the
R. Christie Suppression Joinder is Agent Sze's 135-page
affidavit, dated June 5, 2009, in support of the wiretap
application. The April 8, 2009 affidavit discloses the CS's
criminal record, as well as the fact that the CS was compensated
for cooperating in the investigation. [Id., Motion to Suppress,
Exh. A at ¶¶ 23-24.] Both affidavits discuss the CS's role in
the investigation. See, e.g., id., R. Christie Suppression
Joinder, Exh. B at ¶¶ 179-86. Further, "[r]eports of interviews
and recordings made by the CS were also disclosed in discovery."
[Panagakos Decl. at ¶ 17.]

S. Christie filed a joinder in both the Motion to
Suppress and the R. Christie Suppression Joinder. [CR 10-384,
filed 3/1/13 (dkt. no. 567).] The Motion to Suppress and the
Christies' joinders were ultimately denied. [Id., Order, filed
4/10/14 (dkt. no. 916).] The Christies challenged the ruling on
appeal, and the Ninth Circuit affirmed the denial of the Motion
to Suppress and the joinders. Christie, 825 F.3d at 1066, 1069.

The proceedings in the underlying case show that
Agent Sze's affidavits were available to S. Christie, and the
Government did not intentionally suppress or withhold them from
the defense. S. Christie does not identify any other evidence
the Government allegedly suppressed or withheld from her. The
argument in Ground Two that the Government intentionally

19

suppressed and withheld material exculpatory and impeachment evidence in Agent Sze's affidavits is without merit.  S. Christie also argues the use of Agent Sze's affidavits in this case was improper because the DEA and Federal Bureau of Investigation relied on "par[a]llel construction[] to conceal that the evidence had been obtained unlawfully."  [§ 2255 Motion at 6]  This argument also fails because the evidence discussed in Agent Sze's affidavits and the evidence obtained using the affidavits were not illegally obtained.

Because the arguments in Ground Two are without merit, neither Ms. Panagakos nor Ms. McMillen rendered ineffective assistance by failing to raise these arguments during her respective periods of representation.  The § 2255 Motion is therefore denied as to Ground Two.

## IV.  <u>Ground Four - Presentation of RFRA Defense</u>[9]

Ground Four alleges that denying S. Christie the opportunity to present her RFRA defense was a fundamental violation of the adversarial process which constitutes a per se violation of her constitutional rights.  The Christies challenged the denial of the RFRA Motion on appeal, and the Ninth Circuit affirmed the ruling, holding that the prosecution of the charges

---

[9] Because Ground Three seeks § 2255 relief based on ineffective assistance of counsel and ineffective assistance of counsel is discussed in all of the other grounds as part of the procedural bar analysis, Ground Three will be discussed last.

20

against the Christies did not violate RFRA. <u>Christie</u>, 825 F.3d at 1063-64. Because the argument that the Christies should have been allowed to raise their RFRA defense at trial was fully litigated before the Ninth Circuit in their direct appeal, S. Christie is procedurally barred from relitigating it in her § 2255 Motion. <u>See, e.g.</u>, <u>United States v. Williams</u>, Crim. No. 11-00937 SOM, 2015 WL 4758403, at *5 (D. Hawai`i Aug. 12, 2015) ("Because Williams's incompetency and poisoning arguments were before the Ninth Circuit when it ruled on his direct appeal, he is procedurally barred from raising those rejected arguments in this § 2255 motion." (citing <u>United States v. Currie</u>, 589 F.2d 993, 995 (9th Cir. 1979); <u>Olney v. United States</u>, 433 F.2d 161, 162 (9th Cir. 1970))).

Thus, S. Christie's argument that denying the opportunity to present her RFRA defense violated her constitutional rights is without merit. Because the argument is without merit, neither Ms. Panagakos nor Ms. McMillen rendered ineffective assistance by failing to raise the argument during her respective periods of representation. The § 2255 Motion is therefore denied as to Ground Four.

## V.   <u>Ground Five - Government Overreaching</u>

Ground Five alleges "[g]ross and unconscionable overreaching of the government." [§ 2255 Motion at 9(a).] "Governmental misconduct or overreaching may be, in an extreme

case, of such an overbearing character as to threaten the ability of the district judge to remove its taint even by the most straightforward talk and the most searching inquiry." Martinez v. United States, 411 F. Supp. 1352, 1361-62 (D.N.J. 1976), *aff'd*, 547 F.2d 1162 (3d Cir. 1977).  S. Christie's § 2255 Motion does not allege the type of extreme circumstances necessary to establish governmental overreaching.

In support of her overreaching argument, S. Christie cites a separate criminal case against R. Christie and Aaron Anderson ("Anderson") in which S. Christie alleges the prosecution attempted to extort R. Christie and Anderson to stop advocating for the legalization of hemp and cannabis. R. Christie and Anderson brought a civil rights action against the County of Hawai`i, which resulted in a $75,000 settlement. S. Christie also cites R. Christie's advocacy against low-flying helicopters and the County of Hawaii's participation in a federal "Green Harvest program." [§ 2255 Motion at 9(a).]  However, S. Christie has not shown how these prior events constituted governmental overreaching in the prosecution of the claims against her in CR 10-384 and in the instant case.  The only conducted related to CR 10-384 and this case which S. Christie alleges constitutes government overreaching is related to the wiretaps and the use of the CS.  S. Christie's argument that the wiretaps were improper is procedurally barred because it was

raised and rejected on appeal.  Further, "the use of informants

is not improper."  <u>See</u> <u>United States v. Carpenter</u>, No.

CR 09-312-VBF, 2010 WL 11545073, at *4 (C.D. Cal. Jan. 13, 2010)

(some citations omitted) (citing <u>United States v. Dennis</u>, 183

F.2d 201, 224 (2d. Cir. 1950) ("Courts have countenanced the use

of informers from time immemorial."); Ninth Circuit Model

Criminal Jury Instruction 4.13 (2003) ("Law enforcement officials

are not precluded from engaging in stealth and deception, such as

the use of informants and undercover agents, in order to

apprehend persons engaged in criminal activities."); <u>United</u>

<u>States v. Rivera</u>, 527 F.3d 891, 899 (9th Cir. 2008) (discussing

why confidential informants were not sufficient and therefore

wire tap was necessary); <u>United States v. Gonzalez, Inc.</u>, 412

F.3d 1102, 1114 (9th Cir. 2005) (finding that government failed

to show that it used traditional investigative tools – such as

use of confidential informants – prior to using wiretap, and

suppressing wiretap as a result)).

Thus, S. Christie has failed to establish there was

government overreaching in the charges brought and prosecuted

against her.  Because the government overreaching argument is

without merit, neither Ms. Panagakos nor Ms. McMillen rendered

ineffective assistance by failing to raise it during her

respective periods of representation.  The § 2255 Motion is

therefore denied as to Ground Five.

**VI.** **Ground Three - Ineffective Assistance**

Finally, this Court turns to S. Christie's claim that her counsel rendered constitutionally ineffective assistance.

This district court has stated:

> To prevail on an ineffective assistance claim, a petitioner must show that (1) counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). That is, the petitioner must also show that the deficiency was prejudicial. Id. at 692.

> Counsel "is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690. But, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the petitioner as a result of the alleged deficiencies. See id. at 697. In other words, any deficiency that does not result in prejudice necessarily fails.

United States v. Chaves, Cr. No. 14-00579 JMS (03), 2016 WL 5660327, at *4 (D. Hawai`i Sept. 28, 2016). As to the reasonableness of representation prong, a court must "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. S. Christie bears the burden of proof as to both prongs of the Strickland analysis. See Turk v. White, 116 F.3d 1264, 1265 (9th Cir. 1997). The Strickland standard also applies to claims that

24

counsel rendered ineffective assistance on appeal.  <u>Smith v.</u>
<u>Robbins</u>, 528 U.S. 259, 285-86 (2000).

This Court has already rejected S. Christie's claim
that Ms. Panagakos and Ms. McMillen rendered ineffective
assistance by failing to raise the arguments S. Christie now
asserts in Grounds One, Two, Four, and Five of the § 2255 Motion.
In addition, S. Christie alleges Ms. Panagakos rendered
ineffective assistance because she failed to conduct a full
investigation of the facts of the case and failed to "file
motions under 18 USC 3504; 18 USC 2511(2)(d); HRS § 711-
1111(2007); HRS § 803-42(b)(3) and 18 USC 2515." [§ 2255 Motion
at 7.]

A.   **Failure to Investigate**

This district court has recognized that:

> In guilty plea cases, where counsel's alleged
> ineffective assistance is a failure to
> investigate, "the determination of whether the
> error 'prejudiced' the defendant by causing him
> [or her] to plead guilty rather than go to trial
> will depend on the likelihood that discovery of
> the evidence would have led counsel to change
> [the] recommendation as to the plea."

<u>Chaves</u>, 2016 WL 5660327, at *9 (alterations in <u>Chaves</u>) (quoting
<u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985)).  S. Christie
ultimately pled guilty after consultation with Ms. Panagakos.
Thus, the issue is whether the additional evidence S. Christie
alleges would have been discovered if Ms. Panagakos had conducted
further investigation would have led Ms. Panagakos to change her

recommendation as to the plea.  The only evidence S. Christie

identifies is the allegedly improper wiretaps and use of the CS.

However, as discussed above, information about these issues was

available to S. Christie's counsel during the underlying

proceedings.  S. Christie does not identify any additional

evidence about the wiretaps or the CS that her counsel did not

have during the underlying proceedings.  Ms. Panagakos states she

"thoroughly reviewed all pertinent discovery, as well as

voluminous materials received from Ms. Christie."  [Panagakos

Decl. at ¶ 16.]  S. Christie does not identify any specific

evidence or materials Ms. Panagakos failed to review or failed to

obtain during her investigation of S. Christie's defense.

　　　　S. Christie has failed to establish: 1) there is any

additional evidence that Ms. Panagakos would have obtained or

reviewed if Ms. Panagakos had conducted further investigation;

and 2) even if such evidence exists, it would have led

Ms. Panagakos to change her recommendation as S. Christie's plea.

S. Christie has established neither that Ms. Panagakos's

investigation was deficient nor that S. Christie was prejudiced.

S. Christie's argument that her counsel rendered constitutionally

ineffective assistance by failing to conduct an adequate

investigation is therefore rejected.

**B.** **Failure to File Motions Listed in the § 2255 Motion**

Under <u>Strickland</u>, S. Christie is required to show that her counsel's failure to file the listed motions constituted deficient representation and, had the motions been filed, there is a reasonable probability the outcome of the case would have been different.  <u>See</u> 466 U.S. at 687-88.  However, "'[c]onclusory allegations which are not supported by a statement of **specific facts** do not warrant habeas relief.'"  <u>United States v. Holler</u>, No. EDCR 10-00288 VAP, 2011 WL 2682142, at *5 (C.D. Cal. July 6, 2011) (alteration and emphasis in <u>Holler</u>) (some citations and quotation marks omitted) (citing <u>Jones v. Gomez</u>, 66 F.3d 199, 205 (9th Cir. 1995)).[10]  Although S. Christie alleges her counsel rendered ineffective assistance by failing to file motions pursuant to 18 U.S.C. §§ 2511(2)(d), 2515, 3504 and Haw. Rev. Stat. §§ 711-1111, 803-42(b)(3), she does not allege specific facts in support of her position.

Whether counsel should have filed a § 3504 motion or a § 2511(2)(d) motion and whether there is a reasonable probability that those motions would have changed the outcome of the case are fact-intensive inquiries.[11]  Ms. Panagakos states, based on her

---

[10] In <u>Holler</u>, the district court rejected the movant's that he was entitled to § 2255 relief because his prior counsel rendered ineffective assistance by failing to file motions to compel.  2011 WL 2682142, at *4-5.

[11] Section 3504 states, in pertinent part:

(continued...)

review of the discovery produced by the Government, she "saw no legal or factual basis to file a motion under 18 U.S.C. 3504 or 2511(2)(d), or to file any motions to suppress other than the ones in which Ms. Christie joined." [Panagakos Decl. at ¶ 16.] S. Christie's failure to present any specific facts to contradict Ms. Panagakos's statement and to support Ground Three's claim

---

[11](...continued)
    (a)  In any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, or other authority of the United States–

    (1)  upon a claim by a party aggrieved that evidence is inadmissible because it is the primary product of an unlawful act or because it was obtained by the exploitation of an unlawful act, the opponent of the claim shall affirm or deny the occurrence of the alleged unlawful act[.]

    . . . .

    (b)  As used in this section "unlawful act" means any act the use of any electronic, mechanical, or other device (as defined in section 2510(5) of this title) in violation of the Constitution or laws of the United States or any regulation or standard promulgated pursuant thereto.

Section 2511(2)(d) states:

    It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.

that a § 3504 motion or a § 2511(2)(d) motion would likely have

changed the outcome of the case is fatal to this portion of her

ineffective assistance of counsel claim.[12]

Section 711-1111 defines, under Hawai`i law, the

criminal offense of violation of privacy in the second degree.

Section 803-42 is titled "Interception, access, and disclosure of

wire, oral, or electronic communications, use of pen register,

trap and trace device, and mobile tracking device prohibited, and

§ 803-42(a) defines certain acts as a class C felony under

Hawai`i law.  If the wiretaps were illegal, these sections could

have arguably supported criminal charges against the responsible

parties.  However, because the wiretaps in this case were not

illegal, motions brought pursuant to these sections would not

provided any support for S. Christie's defense.  S. Christie has

failed to establish either that the failure to file motions

pursuant to the statutes listed in the § 2255 Motion constituted

deficient representation or that the failure to file such motions

was prejudicial to her.  Even assuming that Ms. McMillen had the

opportunity in an ineffective assistance of counsel claim on

appeal to raise prior counsel's failure to file such motions, her

---

[12] Although Ground Three also cites § 2515, that section
would have been an independent source of authority for a motion
in the underlying case.  It merely prohibits the use of evidence
obtained in violation of Title 18, Chapter 119, which includes
§ 2511.

failure to do did not constitute ineffective assistance because the claim would have been meritless.

All of S. Christie's claims of alleged ineffective assistance of counsel fail, and the § 2255 Motion is therefore denied as to Ground Three. Because all of the grounds S. Christie raised have been denied, her § 2255 Motion is also denied.

## VII. **Certificate of Appealability**

This district court has stated that:

In dismissing a § 2255 motion, the court must also address whether [defendant/petitioner] should be granted a certificate of appealability ("COA"). See R. 11(a), Rules Governing Section 2255 Proceedings (providing that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant"). A COA may issue only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

"The standard for a certificate of appealability is lenient." Hayward v. Marshall, 603 F.3d 546, 553 (9th Cir. 2010) (en banc), *overruled on other grounds by* Swarthout v. Cooke, 562 U.S. 216 (2011). The petitioner is required to demonstrate only "that reasonable jurists could debate the district court's resolution or that the issues are adequate to deserve encouragement to proceed further." Id. (citation and internal quotation marks omitted). The standard "requires something more than the absence of frivolity, but something less than a merits determination." Id. (internal quotation marks omitted).

The court carefully reviewed [the defendant/petitioner's] assertions and gave him every benefit by liberally construing them. Based on the above analysis the court finds that

reasonable jurists could not find the court's rulings debatable.

Leon v. United States, Civ. No. 15-00099 JMS-BMK, 2015 WL 3965895, at *9-10 (D. Hawai`i June 29, 2015) (some alterations in Leon).  Reasonable jurists would not find that the rulings in this Order regarding S. Christie's § 2255 Motion are debatable. A certificate of appealability therefore will not be issued.

<u>**CONCLUSION**</u>

On the basis of the foregoing, Sherryanne L. Christie's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, filed April 27, 2017, is HEREBY DENIED.  In addition, this Court DENIES a certificate of appealability.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, February 27, 2018.



    /s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**USA VS. SHERRYANNE CHRISTIE; CR 13-00889 LEK; ORDER DENYING MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY AND DENYING A CERTIFICATE OF APPEALABILITY**